## Pilger *versus* Commonwealth.

1. Where a defendant adopts a theory of defence which is false, and which he must have known to be false, it is not error for the court to instruct the jury, that if the attempted explanation fails it may be regarded as indicative of his guilt.

2. Where the defendant may have committed the crime charged, through the agency of another, proof of the absence of the defendant from the scene of the crime, at the time it was committed, is not a sufficient defence.

3. Turner *v.* Commonwealth, 5 Norris, 54, distinguished.

February 25th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Oyer and Terminer of *Lackawanna county :* Of January Term, 1886, No. 43.

Indictment of Charles Pilger for arson.    Plea, not guilty.

The facts of the case as they appeared on the trial appear in the charge of the court, ARCHBALD, A. L. J.

Charles Pilger, the defendant, stands charged in this indictment with felonious arson, in having on the 30th day of March, 1884, in this county, feloniously, maliciously and voluntarily set fire to burn, and cause to be burned, a certain dwelling-house of one Jacob Rodetskie.    The statute under which he is indicted, or that portion of it which covers this crime, is as follows:  " If any person shall maliciously and voluntarily burn, or cause to be.burned, or set fire to or cause or attempt to set fire to, with intent to burn any factory, mill or dwelling-house of another, or any other building by means whereof any dwelling-house shall be burned, then, and in every such case, the person so offending shall be adjudged guilty of felonious arson."

It appears that on the 30th of March of last year, Jacob Rodetskie while asleep in his house, about four or half-past four o'clock in the morning, was awakened by an explosion, which he states sounded like a blast.    Not long after that, plastering came down upon the bed where he, his wife and his little child were sleeping, and after that fire began dropping down upon them —sparks of fire.    He and wife were both alarmed, and after some little search for their child through this plastering that had fallen, they got out of the house with the child.    On coming out of the house they met the two Pilger boys and Mrs. Pilger, who were coming down from up stairs, where the Pilger family were living.    An alarm of fire was given, and the neighbors hurried in and found a portion of the building blown off, or blown away, so that at the top there was an aperture of eighteen inches to two feet, extending down to the bottom, where it just hung.    This was so far pushed over by the explosion, that the chief of the Fire Department, when he arrived, had it taken down for fear it might fall upon the people.    Parties who entered into that building found the upper part of the building burning, mainly in the room over the place where Rodetskie was.

The question is, whether the defendant was guilty of setting that building on fire, or causing it to be set on fire and burned? The case of the Commonwealth depends upon circumstantial evidence—that is, circumstances, which, taken together, as is claimed, lead to a conviction of the guilt of this defendant.

I will detail some of the circumstances which they claim point to the guilt of the defendant.    When some of the first witnesses, who entered the building and rushed up to where

the fire was, went up there, they found an oil can, part of it burned off, I do not remember the evidence whether it was the top or the spout; they also found a pile of burned rags— burning rags; the upper part of the building very much cleared of furniture, nothing there, as they say, but an old bed.   Another witness, who entered among the first, found the doors leading to that part of the building fastened, so that he could not get in, and there were no keys in the doors.   Rodetskie says that when he came out, forced out as he and his wife and child were in their night clothes, the defendant's wife and his children came down dressed, had their shoes on, Mrs. Pilger with her dress on; that the little daughter of about nine or ten years old, part of the Pilger family, was not there in the house.   All this showing, as they claim, evidences of a preparation for such an event as a wilful setting on fire of the house would be.   It may be stated right here, in considering this evidence, that the claim is disputed about Mrs. Pilger being dressed when she came down, or the boys being dressed.   It is also disputed that this little child was not there.   John Christ has testified that the child was brought into his house that morning; that he received the family in the house; that the children, I believe, did not have on their shoes, you will remember the evidence; that there was not that completeness in their dress, however little they may have drawn on, to show that they were dressed and prepared for such a thing as a wilful fire.   The Commonwealth also claims that the defendant was there in the neighborhood, that he was seen by witnesses who were here on the stand, and making no effort to put out the fire.   The Commonwealth also claims that these people, Mrs. Pilger and the boys, apparently made no effort to put out the fire.

Now, the Commonwealth contends that this was a wilful firing on the part of the defendant as a result of troubles which had previously existed and culminated in regard to the ownership and the title of this property.   There had been an action of ejectment between the Buttermans and Pilger, in which, instead of being declared the whole owner of the property, which was in Pilger's possession, the Buttermans had been declared to be the owners of five sixths, leaving only the title as to one sixth in the defendant.   The verdict of the jury in that case was rendered in October, prior to this fire, and the matter having been taken to the Supreme Court, the decision of this court was affirmed some time in March, 1884, on the 19th of March, if I remember the evidence right, and the judgment of the Supreme Court having been remitted to this court on the 27th of March, three days prior to this fire, a writ to deliver possession of five sixths of the property to the Buttermans

[Pilger v. Commonwealth.]

was issued and executed by the sheriff of this county. The Commonwealth brings this to your notice in connection with the other matters, as showing a motive on the part of this defendant. The Buttermans were just on the eve then, according to that record, of the enjoyment of the property to the extent the law had declared to be theirs.

Now, unfortunately for this defendant, during the troubles that he had with these parties, he had declared an intention, if he lost the case, that he would blow up or light up this property—this house. Now, those threats are not independent evidence of this crime. Pilger might have been indiscreet enough to make these threats and still not be guilty of this crime. Fortunately for us, we sometimes say more than we intend or carry out, as has been argued to you by counsel for the defendant. But these threats may be taken as a circumstance connected with the other circumstances in the case, to show the guilt of this defendant. Was this fire the carrying out of those threats? I need hardly dwell upon the fact whether or not these threats are distinctly proved to have been made; there are several witnesses who testify to them, Rodetskie and his wife, Mrs. Rodetskie's mother, and, I think, some others, Frank Pilger and Frank Pilger's wife. In regard to Frank Pilger, it is claimed that he with others have conspired to state the evidence wrongly so as to bring this defendant within the toils of the law. John Christ also is brought in, who is alleged to have been present at the time when these threats, or some of them, were made, and he says he did not hear them. Still, at the same time, there is considerable evidence independent of these attempts to answer some of the witnesses or to throw doubt upon the validity of their testimony, to show that the defendant did actually make these threats. If you are convinced, however, that he did not make these threats, that is a circumstance in his favor; if you are convinced that he did make these threats, that is a circumstance against him.

It may be said in explanation, as has been argued to you, that it would be strange for a person, if he had an intention of this character, to openly declare it in the way that the witnesses stated that Pilger did, but that same objection might be made to all threats.

The Commonwealth further produces an insurance policy taken out by this defendant the 19th of January of last year, between the time when the verdict in the favor of the Buttermans was rendered in this court and the decision of the Supreme Court. They adduce this as evidence that the defendant may have had a motive also in burning the building in getting some of the insurance; it is perhaps better taken as

[Pilger *v.* Commonwealth.]

repelling any inference that in burning this building in which he had a sixth interest, he would otherwise be destroying his own property.

Now, gentlemen, do these circumstances, taken together, convince you of the defendant's guilt? You are not to take one circumstance and consider that alone, but to take the circumstances together. Do they form such a chain about this defendant as brings you to a conviction of his guilt? If they do not, then you cannot convict this defendant of this crime. If, on the other hand, they do, you have still to consider them in the light of the case as presented to you on the part of the defendant. You cannot consider the case presented on the part of the Commonwealth, or the theories adduced from the evidence on the part of the Commonwealth alone. If the Commonwealth's theories are not consistent with the evidence, if you are not convinced of that consistency from the evidence, then you cannot convict.

[Now, the defence show, in the first place, that this fire occurred as the result of an explosion of powder; that John Pilger, a son of Mr. Pilger, getting up that Sunday morning with the intention of going out hunting, went to a bureau where some powder had been kept by his father that he had for blasting his well, and in filling his powder horn from that loose package, some of the powder fell upon the lamp, the powder began to spit in sparks, he got frightened and dropped both powder and lamp, and rushed for the door, and the explosion followed which threw him out through the door against the railing of the stairs; that he screamed out and his little brother came. He was partially dressed, as he says; that they then called their mother, or she came out, I forget just what the evidence is, and that they all threw on what clothes they could and rushed down stairs. Does this explain to you this explosion and fire? Is it a consistent or an inconsistent story in the light of the other facts in the case? If you believe this to be the true explanation of this explosion and fire, then, of course, there can be no conviction of the defendant. The whole was the result of misfortune and accident, and however this defendant may seem to be beclouded with the other facts in the case, still, if this is the truth, if this is the true explanation of the occurrences of that morning, the defendant is not guilty, and could not be convicted of this crime.

If it is not true it places the defendant in the position of making an attempted explanation, which fails of convincing, and leads to the opposite result of pointing rather to his guilt.]

The defendant also, however, puts in another defence, that he was not present at this time, and so could not have been a party to it. This is what is customarily known in the law

and common speech as an *alibi*. Where the presence of the defendant is essential to the commission of the crime, it is a very important circumstance that he is not there ; in fact if he is not there and his presence was essential to the commission of the crime, his absence being made out is a complete answer to the charge. For instance, in murder, where the murder was alleged to have been the result of a blow, or of a shot by the defendant, if the defendant could show that he was not there, and so could not have given the blow or made the shot, of course it would be a complete answer.

[The presence of the defendant in this case was not essential to the commission of this crime. It is a circumstance strongly in his favor if you believe that he was not there, for if he was not there, then in order to convict him, you must find that the parties who actually set fire to this, if you believe it was intentionally burned and not the result of accident, must have done it at the direction of defendant, in order to make him guilty.]

Let us look at the circumstances set up to show his absence. George Roser swears that he sent for Charles Pilger to come and see him, the intention being to have him come the next day, Sunday ; that on Saturday night, however, Pilger came over ; that they went together to several saloons and had taken a good many friendly drinks, beer and whiskey ; finally went home, and George Roser himself went to bed ; that when he awoke in the morning he found Pilger still at the house, about seven or eight o'clock. The several saloon-keepers where these parties visited that night are brought here and testify to a similar set of circumstances ; that these two parties were there that night ; that they know that that was the night, because, as some of them say, they heard the next day of the fire at Pilger's house. George Pilger and Johnny Pilger, the two boys, correspond in their testimony with the testimony of these witnesses, testifying that their father went off and that their father was sent for. Mrs. Roser and her daughter, Catherine, also testify to similar circumstances ; Mrs. Roser states that these two friends came home about three o'clock, two or three o'clock in the morning ; that they were well under the influence of drink ; that her husband, George, went to bed and that Pilger was sick at the stomach and vomited on the floor ; she had to call her daughter in to help her clean up this vomit, and that Pilger was finally put to sleep on the lounge ; that she went to bed in the same room, but could not go to sleep, and saw Pilger there all the time until she got up in the morning, and dressed herself preparatory to getting breakfast for the family ; that Pilger remained there and took breakfast, and went off between eight and nine o'clock.

2 AMERMAN—15

[Pilger *v.* Commonwealth.]

Now these witnesses, if believed, make out a complete *alibi;* that this defendant could not have been at this burned house during that time; they cover the whole ground, tracing the defendant from the previous evening, about seven or eight o'clock, until the next morning at eight.

This theory of the defence is also supported by some witnesses who were first at the fire, and say they saw Mrs. Pilger, and they saw the boys, but they did not see Mr. Pilger until eight or nine o'clock next morning.

There is also a slight circumstance in the fact that the neighbors, aroused possibly by their remembrance of the threats that had been made, and partaking possibly in this dispute between these parties, having some interest in it as neighbors often will, hunted for Pilger to throw him into the fire, as they said. Of course if he was there, unless he was in concealment, they would not have had need to have hunted for him.

On the other hand, this claim of an *alibi* is repelled by two witnesses, Mrs. Wendline, the mother of Mrs. Rodetskie, who says she saw Pigler there that morning; that she has known him for five years; that he was standing on one of the streets, I forget which it was, and looking at the fire; that it was about between daylight and dusk, and she could well distinguish him; she also testified that Pilger is not a drinking man; all the time she has known him, she has never known him to be drunk. It is claimed on the part of the defence that as the mother of Mrs. Rodetskie, she has an interest and a bias in this suit; that Mrs. Rodetskie and her husband feel injured as the result of this fire, and that they are naturally biased towards this defendant.

The testimony of Charles Brooks is the testimony of a disinterested witness, so far as it appears, and he also testifies that he saw Pilger there that morning as he came to the fire. Now where is the truth in this matter, gentlemen? Which do you believe? Do you believe the evidence on the part of the Commonwealth, Mrs. Wendline and Mr. Brooks, that Pilger was there, or do you believe the testimony of these other witnesses, Mr. and Mrs. Roser and their daughter, and the several other saloon-keepers, that Pilger was not there; that he was in Ward street?

If the defendant was there present at the fire, then that disposes of the *alibi* and its effect; that is to say, the absence of the defendant at the time this occurred is lost to him. [If the defendant was not there, then, as I said to you before, the fact that he was not there would entirely clear him of this offence, unless it was shown that it was through his agency that the fire occurred; that notwithstanding his absence he had directed others to set the building on fire.]

The defendant again explains this whole matter as the result of a motive against him; that his nephew and his nephew's wife had a quarrel with him about some money, and that they are moved by that to state these threats; that John Butterman, who has been on the stand, was one of the parties with whom he contested in regard to this property, and that they all have an animus against him, and have seized upon the circumstance, unfortunate for him, and got up this whole matter to press him still further to the wall.

[Now, gentlemen, after considering both sides of the case, if you are still convinced of the case which the Commonwealth claims to have made out of the guilt of this defendant, then of course it is your duty to return a verdict of guilty.] If, on the other hand, considering all the evidence, you are convinced either that the explosion occurred as detailed by the witnesses on the part of the defence, or that the defendant could not have been implicated by reason of his absence, then there could be no conviction, or if there is a reasonable doubt of the defendant's guilt after reviewing all the testimony, still remaining in your minds, then there could be no conviction. The law in its mercy presumes all men innocent until they have been proved guilty, and following out that idea of mercy, the rule of evidence in criminal cases is, not that the evidence must preponderate for the Commonwealth in order to secure a conviction, but that it must lead to a conviction beyond a reasonable doubt; that is such a doubt as a reasonable man would entertain, a doubt springing clearly from the evidence, a doubt that remains in your minds, and which you cannot, as reasonable men, dispel after all of the evidence has been carefully reviewed by you.

Now, we are not concerned with the past troubles of these parties, except so far as they lead to an explanation possibly of the conduct of this defendant. If the defendant is guilty, it should make no difference to you that he has suffered loss or been wronged, if he has, in the past. If the defendant is not guilty, he should be declared so by your verdict, not as the result of sympathy, but because that is the result of the evidence.

You are to deliberate upon this evidence carefully; this is a high crime charged upon this defendant, one of the highest crimes known to the law. The results are serious to him; you are not to be dissuaded by this fact if the evidence points to his guilt. You are not responsible for the results of your verdict. The seriousness of the crime only calls for your more serious consideration of the evidence. The case is now submitted into your hands.

The jury returned a verdict of guilty as charged in the indictment.

The defendant was thereupon sentenced to pay a fine of $500, and undergo an imprisonment in the penitentiary for the term of three years; whereupon he took this writ, assigning for error, *inter alia*, those portions of the charge included within brackets.

*I. H. Burns*, for plaintiff in error.—1. Where a defendant forges or fabricates evidence, or attempts to corrupt witnesses, it is a circumstance that may weigh heavily against him, but it is certainly not the law that a jury are to infer the guilt of a defendant because they fail to be convinced by the testimony of his witnesses. The exact point here raised was decided by this court in Turner *v.* Commonwealth, 5 Norris, 54.

2. There was no evidence whatever that the defendant directed any other person to set fire to the building burned. The assumption on the part of the court that he might have done so was entirely outside the case, and its effect was to allow the jury to find as a fact something that was not in the evidence, but which, at most, could be only a mere suspicion raised in their own minds as to what the defendant might have done, but as to which there was no evidence. It was a manifest error to submit to the jury a question on which there was no evidence. We believe this is a principle of law settled beyond dispute : Turner *v.* Commonwealth, *supra*. The same doctrine is clearly laid down in Haines *v.* Stauffer, 10 Barr, 363 ; Urkett *v.* Coryell, 5 W. & S., 60 ; Musselman *v.* E. B. & W. R. R. Co., 2 W. N. C., 105.

3. From the language of the charge the jury may well have thought that if they did not believe the evidence of the witnesses as to how the explosion occurred, the presumption of guilt was against the prisoner, and he was bound to establish his innocence. We submit that under all these facts we have not had what is guaranteed to every citizen—a fair and impartial trial according to the forms of law.

*George S. Horn* and *John F. Connolly* (*H. M. Edwards*, District Attorney, and *W. G. Ward*, with them), for the Commonwealth.—It would be manifestly unfair and unjust to the court below to detach a few words from the body of the charge and give to them a meaning different from what a fair interpretation of the words would be when taken in connection with the whole charge : Pennsylvania R. R. Co. *v.* Coon, 12 W. N. C., 138.

In Alexander *v.* Commonwealth, 9 Out., 10, it appears that in the matter contained in the 19th assignment of error in that case the jury were told by the trial judge that, " where the defendant set up the plea of self-defence to an indictment

[Pilger v. Commonwealth.]

of murder, he must satisfy you of the truth of the plea by the preponderance of testimony. If he failed to do so in this case, then he is guilty of murder in the first or second degree, or voluntary manslaughter, as you find the facts may warrant."

In the matter embraced in that assignment of error the jury were distinctly told that the defendant was guilty if he failed in his plea of self-defence ; but the whole charge dispelled any idea of such an intent or conclusion by the trial judge. The charge as a whole being correct, the judgment was affirmed.

Just so in this case, the probability of Pilger's innocence is prominently presented to the jury all through the charge, and the benefit of every reasonable doubt is presented to the jury in Pilger's behalf.

The learned Judge cautioned the jury not to find the accused guilty if he was not present at the fire, unless the evidence in the case showed, beyond a reasonable doubt, that the defendant directed some one to set the fire. Taking the whole charge together, such is and was the purpose and effect of the matter complained of. It would be unfair to the learned Judge to convict him of error on a detached fragment of the charge, when the whole charge shows that it was all the defendant had a right to claim in his behalf.

Mr. Justice GORDON delivered the opinion of the court, March 29th, 1886.

An examination of the evidence in this case convinces us that a re-trial would result in no material benefit to the defendant; for the testimony is of such a character as to render his acquittal by another jury improbable. That the fire originated from his own act, or that of some one of his family, is not a matter of doubt or dispute, and the only question in the court below was, whether this was intentional, or, as described by his son, John Pilger, accidental. This young man's story, though corroborated by his brother and mother, was not credited by the jury, and we are obliged to say, in view of all the circumstances, that its credibility was more than doubtful. As the theory of the defence was not believed by the jury, there was left for that body one of two conclusions, either of which involved the defendant's guilt. One was that the explosion was produced by the direct act of Charles Pilger himself, and the other that he effected that result through the agency of one or both of his sons. In either case, from the fact that the family seems to have been prepared for the result which occurred, the older members of that family obviously had knowledge of that which was about to happen. Treating, then, John's story as false, the conclusion is inevitable that that story was concocted by one or more of the family, and acqui-

[Abraham *v.* Mitchell.]

esced in by the others in order to shield the father from the consequences of his crime. From this, which cannot be regarded other than as a correct view of the case, we are not prepared to say that the court erred in saying to the jury that if the attempted explanation failed it might be regarded as indicative of the defendant's guilt. Certainly the court in so saying, but gave expression to a natural and necessary result. There was but one theory on which the defendant rested for acquittal, and that depended on a story which was either true or false. But if false, who devised it? Let it be one of the sons, yet as the father adopted and used the falsehood he was as culpable as the one who framed it. Here, then, is not, as in Turner *v.* The Commonwealth, 5 Norris, 54, a mere failure to prove a given point in the prisoner's defence, but a corrupt attempt to manufacture a theory by which, if successful, he might escape from the consequences of his guilt, but which, its fraudulent character being exposed and so failing in the result intended, involved him in an additional crime that must necessarily damage his case with the jury.

The remaining assignments require no discussion, for it is to no purpose to insist that there was no evidence tending to show that Pilger may have fired the building through the agency of another when it is next to certain that the whole family were conscious of the design, and were fully prepared for the result.

> The judgment of the Court of Oyer and Terminer is affirmed, and it is ordered that the record be remitted for the purpose of execution.